IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KAYLENE DICKMEIER,

No. 2:14-cv-00967-HZ

                Plaintiff,

OPINION & ORDER

     v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                Defendant.


Rory J. Linerud
Linerud Law Firm
P.O. Box 1105
Salem, OR 97308

      Attorney for Plaintiff

//

//


1 - OPINION & ORDER

Billy J. Williams
Acting United States Attorney, District of Oregon
Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97201

Daphne Banay
Special Assistant United States Attorney
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

        Attorneys for Defendant

HERNÁNDEZ, District Judge:

        Plaintiff Kaylene Dickmeier brings this action under the Social Security Act ("Act"), 42

U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the Commissioner of Social Security's

final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of

the Act. Dickmeier challenges the Commissioner's denial of her application on three separate

grounds, but none of them are a sufficient reason for reversal and therefore, the Commissioner's

decision is affirmed.

## BACKGROUND

        Dickmeier applied for DIB on June 18, 2010, alleging an onset date of March 1, 2010.

(Tr. 153–54.) The Commissioner denied her application initially and after reconsideration. (Tr.

114–17, 121–23.) After a hearing in July of 2012, Administrative Law Judge ("ALJ") James W.

Sherry found Dickmeier was not disabled. (Tr. 14–28.) Dickmeier appealed, but the Appeals

Council denied her request for review, making the ALJ's decision the Commissioner's final decision that Dickmeier now challenges in this Court. (Tr. 1–7.)

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

The ALJ found that Dickmeier met the insured status requirement for DIB through June 1, 2015. (Tr. 16.) At step one, the ALJ found Dickmeier had not engaged in substantial gainful activity since March 1, 2010, her alleged onset date. (Tr. 16.) At step two, the ALJ found Dickmeier had the "following severe impairments: cervical degenerative disc disease; cervicalgia; sacroiliitis; left knee patella chondromalacia; chronic myalgia and arthralgia/fibromyalgia; left carpal tunnel syndrome; left tarsal tunnel syndrome; asthma; hearing loss; pain disorder association with a general medical condition; and posttraumatic stress disorder[.] " (Tr. 16.) At step three, the ALJ found Dickmeier's impairments or combination of impairments did not meet or equal the severity of any listed impairments. (Tr. 16–17.) The ALJ next found that Dickmeier had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). The claimant is able to lift/carry up to 20 pounds occasionally and 10 pounds frequently. She is able to stand/walk up to six hours in an eight hour workday and she is able to sit for six hours in an eight hour workday. She has unlimited push/pull ability with the upper extremities within the lifting restrictions. The claimant can never climb ladders, ropes, or scaffolds and she can occasionally climb stairs and ramps. She can occasionally crouch, crawl, and kneel. She can frequently rotate, flex, and extend her neck. She can occasionally reach over head bilaterally [with] the upper extremities. She can

have exposure to moderate noise level. She should avoid concentrated exposure to irritants, such as dusts, odors, fumes, chemicals, and gases, and poorly ventilated areas. The claimant is capable of performing simple, routine, and repetitive tasks and she would be able to understand and remember work place procedures and simple routine instructions. She could complete a normal workday and workweek. She can have occasional contact with the public, but would be capable acceptable [sic] supervisor and coworker contact and would be able to accept instructions and criticism.

(Tr. 20.) At step four, the ALJ found that Dickmeier was not able to perform any of her past relevant work. (Tr. 26.) At step five, the ALJ found that Dickmeier was not disabled because jobs existed in significant numbers in the national economy that she could perform, including mail clerk, lab sample carrier, deliverer (outside), charge account clerk, surveillance system monitor, and escort vehicle driver. (Tr. 26–27.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

**DISCUSSION**

Dickmeier challenges the ALJ's decision on three separate grounds: 1) that the ALJ improperly discounted the credibility of Dickmeier's testimony about the severity and limiting effects of her symptoms; 2) that the ALJ improperly relied on testimony from a vocational expert that conflicted with information in the *Dictionary of Occupational Titles*; and 3) that the ALJ erred by not providing the narrative explanation required by SSR 96-8p as to the ALJ's formulation of Dickmeier's RFC or how the RFC finding accommodated her tarsal tunnel syndrome. Each contention is addressed below.

### 1. Dickmeier's credibility

Dickmeier argues that the ALJ improperly relied on her application for and receipt of unemployment benefits as a reason for rejecting her subjective testimony as not entirely credible. Pl. Brief at 12–16. An ALJ analyzes the credibility of a claimant's testimony regarding her subjective pain and other symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir. 1991) (*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

The ALJ provided a lengthy summary of Dickmeier's testimony that included a description of her daily activities, her various physical ailments, including shoulder pain, hearing loss, wrist problems, knee pain, ankle pain, back pain, eczema on her hands, back and feet, asthma, and mental impairments including depression and mood swings. (Tr. 19–21.) The ALJ found that Dickmeier's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 20–21. There is no evidence of malingering in the record. Therefore, the ALJ's reasons for discounting Dickmeier's credibility must be clear and convincing.

The ALJ explained that "the record reveal[ed] that [Dickmeier's] allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date," and the "fact that the impairments did not prevent [her] from working at that time suggests that it would not currently prevent work." (Tr. 21.) The ALJ then gave a lengthy summary of the medical evidence of Dickmeier's various symptoms over time and concluded that "current

treatment notes show [her] signs and symptoms related to her severe impairments have not

worsened since the alleged onset date." (Tr. 22.) A conflict between a claimant's ability to work

while suffering from impairments that she now claims render her disabled is a valid reason for

discounting the claimant's credibility. See Bray v. Com'r of Soc. Sec. Admin., 554 F.d 1219,

1227 (9th Cir. 2009) (ALJ's conclusion that claimant's recent work history while suffering from

the same impairments was a sufficient reason for discounting credibility ); Gregory v. Bowen,

844 F.3d 664, 666–67 (9th Cir. 1988) (affirming ALJ's conclusion that claimant was less than

credible in part because "substantial evidence indicated that the condition of Gregory's back had

remained constant for a number of years and that her back problems had not prevented her from

working over that time.").

The ALJ also noted that "[a]lthough there is a referral in the treatment notes for physical

therapy, there is no evidence of record indicating the claimant followed up on the referral, which

suggests that the symptoms may not have been as serious as has been alleged in connection with

this application and appeal. (Tr. 23.) This too is a legally sufficient reason for discounting the

credibility of her testimony. Atwood v. Astrue, 742 F. Supp. 2d 1146, 1152–53 (D. Or. 2010)

("The ALJ may consider many factors in weighing a claimant's credibility, including . . .

inadequately explained failures to seek treatment or to follow a prescribed course of treatment.")

(citing Smolen, 80 F.3d at 1284).

The ALJ stated that "[t]he claimant has asthma but there is very little in the current

treatment notes," and also that "[t]he claimant alleged she has constant outbreaks of eczema on

her hands and outbreaks over her body; however, the record since the alleged onset date shows

only one reported outbreak." (Tr. 23.) Again, that is a legally sufficient reason for discounting

Dickmeier's credibility. Social Security Ruling (SSR) 96-7p, available at 1996 WL 374186 at *7

(explaining that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]").

The ALJ also discounted her testimony about the limiting effects of her symptoms because it was inconsistent with evidence in the record about her daily activities, including a report from her mother that contradicted Dickmeier's claims. (Tr. 24.) Inconsistencies such as these are yet another legitimate basis for the ALJ to find a claimant less than credible. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (upholding an ALJ's adverse credibility findings based on inconsistencies between the claimant's testimony and numerous medical reports).

Dickmeier, however, does not challenge the ALJ's analysis of her credibility on any of those grounds. Instead, Dickmeier argues that the ALJ improperly relied "primarily and most importantly" on the fact that she previously applied for and received unemployment benefits as a reason for finding her less than credible. Pl. Brief at 15. First, the Court disagrees with Dickmeier's characterization of the ALJ's reasoning. The ALJ did not "primarily and most importantly" rely on the unemployment issue at all—the ALJ briefly mentioned her application for and receipt of unemployment benefits in merely two sentences at the end of a nearly five-page long discussion of the other issues with Dickmeier's credibility that the Court analyzed above. Tr. 21–25. More importantly, even if the Court were to find the ALJ erred in relying the unemployment benefits issue as a reason to discount her credibility, that error is harmless because the ALJ gave numerous, legally sufficient reasons for discounting Dickmeier's credibility. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by

substantial evidence in the record."). Accordingly, the Court finds no reversible error in the ALJ's conclusion that Dickmeier's testimony was not fully credible.

### 2. Alleged conflict between VE testimony and the DOT

Dickmeier also argues that the ALJ erred by relying on testimony from a vocational expert ("VE") about the jobs she could perform with her RFC because information about those jobs contained in the *Dictionary of Occupational Titles* ("DOT") seemed to conflict with the limitations in her RFC. Pl. Brief at 6–8.

At step five, the Commissioner bears the burden of proving that the claimant can perform other work in the national economy, given the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d at 1099; 20 C.F.R. § 416.920(e), (f), & (g). In doing so, the ALJ relies primarily on the DOT and its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Title*s ("SCO"). Bray, 554 F.3d at 1233. The DOT and SCO are not the sole sources of information concerning jobs, as the ALJ can also rely on testimony from a vocational expert about locally available jobs, even if the job traits vary from the DOT classification. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). But before relying on VE testimony about the requirements of a particular occupation, the ALJ must first inquire whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152–54 (9th Cir. 2007).

Here, the ALJ asked the VE to identify jobs that Dickmeier could perform with a limitation to, among others, occasional overhead reaching bilaterally. (Tr. 77–79.) The VE identified mail clerk, lab sample carrier, deliverer (outside), charge account clerk, surveillance system monitor, and escort vehicle driver. (Tr. 78–80.) The VE then testified that the information

she gave the ALJ was consistent with the DOT unless she specifically stated otherwise. (Tr. 81–82.)

Dickmeier claims that the DOT descriptions of five of the six identified jobs are inconsistent with the limitations in her RFC because the jobs "require frequent reaching, and no distinction is made by the DOT regarding overhead reaching and other forms of reaching." Pl. Brief at 7.

The Court does not find a conflict between the VE's testimony and the DOT descriptions of the identified jobs. First, the VE testified she chose the mail clerk, lab sample carrier, and deliverer (outside) jobs specifically because those positions were compatible with the ALJ's restriction to only occasional bilateral overhead reaching. (Tr. 78.) Second, the ALJ did not restrict Dickmeier to all forms of reaching, but only to occasional overhead reaching bilaterally. The DOT descriptions of the various positions only indicate that the jobs require unspecified reaching; none of the descriptions include any mention of any overhead work. See Routing Clerk,[1] DOT § 222.687-022, available at 1991 WL 672133; Lab Sample Carrier, DOT § 922.687-054, available at 1991 WL 688131; Deliverer, Outside, DOT § 230.663-010, available at 1991 WL 672160; Charge Account Clerk, DOT §205.367-014, available at 1991 WL 671715; Escort Vehicle Driver, DOT § 919.663-022, available at 1991 WL 687886. In contrast, other DOT descriptions expressly indicate when overhead work is involved. See, e.g., Flour–Blender Helper, DOT § 520.686–022, available at 1991 WL 674044; Gambreler Helper, DOT § 525.687–034, available at 1991 WL 674446; Rigger, DOT § 921.260–010, available at 1991 WL 688020. Courts in this district have repeatedly held that a limitation on overhead reaching does not conflict with a DOT description that requires reaching generally. Gonzales v. Colvin, No. 3:12-CV-01068-AA, 2013 WL 3199656, at *3–4 (D. Or. June 19, 2013); Lee v. Astrue, 2013 WL

---

[1] The ALJ and the VE referred to the job under this DOT entry as "mail clerk." (Tr. 27, 78.)

1296071, *11 (D. Or. Mar. 28, 2013); see also Palomares v. Astrue, 887 F.Supp.2d 906, 920

(N.D. Cal. 2012) (concluding that occasional, one-armed, overhead reaching limitation was

consistent with DOT requirement for constant reaching). Third, and finally, to find a conflict

between the VE's testimony and the DOT, the Court would "have to read a requirement into the

DOT that is not expressly stated[.]" Gonzalez, 2013 WL 3199656 at *4.

     Dickmeier also claims there is a conflict between the VE's testimony that she could

perform the job of surveillance system monitor, which according to the DOT would require her

to engage in "frequent" talking and hearing, and her RFC, which limits her to only occasional

public contact. But the Court again finds no conflict. The DOT does not specify what kind of

"talking" or "hearing" is required to perform the job, and the DOT narrative description does not

indicate any kind of public contact:

> Monitors premises of public transportation terminals to detect crimes or
> disturbances, using closed circuit television monitors, and notifies authorities by
> telephone of need for corrective action: Observes television screens that transmit in
> sequence views of transportation facility sites. Pushes hold button to maintain
> surveillance of location where incident is developing, and telephones police or
> other designated agency to notify authorities of location of disruptive activity.
> Adjusts monitor controls when required to improve reception, and notifies repair
> service of equipment malfunctions.

Surveillance System Monitor, DOT § 379.367-010, available at 1991 WL 673244. The DOT

does not, as Dickmeier asserts, indicate that the job requires "communication with members of

the public to carry out the various tasks." Pl. Brief at 8. Again, to find a conflict between the

VE's testimony and the DOT, the Court would have to "read a requirement into the DOT that is

not expressly stated[.]" Gonzalez, 2013 WL 3199656 at *4. Accordingly, the Court finds no

conflict between the VE's testimony and the DOT, and therefore concludes that the ALJ did not

err in relying on the VE's testimony at step five.

### 3. Dickmeier's tarsal tunnel syndrome and her RFC

Finally, Dickmeier contends that the ALJ erred by failing to provide an adequate narrative explanation, as required by SSR 96-8p, regarding "1) what medical opinion evidence he relied [on] when formulating the physical RFC regarding the tarsal tunnel impairment; or 2) how the medical evidence or opinions supported those limitations included in the RFC." Pl. Brief at 11–12.

An ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion. SSR 96–8p at *7. However, an ALJ is not required to "discuss every piece of evidence" in the record. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ in this case complied with the narrative requirements of SSR 96-8p. He provided a lengthy discussion—covering nearly eight single-spaced pages—of the evidence in the record, explained what evidence he relied on, and gave proper reasons for rejecting or discounting evidence he found less than credible. The Court finds no error in the ALJ's narrative discussion. See Holloway v. Colvin, No. 6:12-CV-109-CL, 2013 WL 3929778, at *4 (D. Or. July 29, 2013) (rejecting similar argument based on SSR 96-8p where ALJ provided a four-page narrative summarizing the evidence, explaining which evidence the ALJ relied on, and giving sufficient reasons for rejecting other evidence).

Notably, Dickmeier does not identify any medical evidence in the record about her tarsal tunnel syndrome that the ALJ should have included in his narrative. The only evidence the Court can find of her tarsal tunnel syndrome is her own subjective complaints, which the ALJ properly found were not entirely credible. In making his RFC determination, the ALJ was not required to "prepar[e] a function-by-function analysis for medical conditions or impairments that the ALJ

found neither credible nor supported by the record[.]" <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).

Finally, Dickmeier claims that the ALJ "reached his own conclusion regarding Dickmeier's physical RFC, which is a medical judgment the ALJ is not qualified to make." Pl. Brief at 11. But that misunderstands the nature of the RFC analysis and the ALJ's role. "The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities." SSR 96-55p, <u>available at</u> 1996 WL 374183 at *5. According to Social Security regulations, and contrary to Dickmeier's assertions, it is in fact precisely the ALJ's role to evaluate a claimant's RFC: "[T]he administrative law judge . . . is responsible for assessing your residual functional capacity." 20 C.F.R. § 404.1546(c). Accordingly, the Court finds no error.

## CONCLUSION

For the reasons stated, the Commissioner's decision is AFFIRMED.


IT IS SO ORDERED.

Dated this _____11_____ day of _____December_____, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge